IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 21-cv-02926-PAB-GPG

ANNA DULANEY,

    Plaintiff,

v.

ANGELA GRUBBS, Montrose County Sheriff's Deputy, in her individual capacity,

    Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion to Dismiss [Docket No. 26], filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Anna Dulaney filed a response, Docket No. 29, and defendant Angela Grubbs ("Deputy Grubbs") filed a reply. Docket No. 30. The Court has jurisdiction under 28 U.S.C. § 1331.

**I.  BACKGROUND**[1]

On or about October 30, 2019, Angela Grubbs, a deputy sheriff with the Montrose County, Colorado Sheriff's Office, Docket No. 26-1 at 3, drafted and submitted an affidavit to search 22035 P77 Road, Cimarron, Colorado (the "property") to Montrose County Court Judge Ben Morris. Docket No. 23 at 3, ¶ 15. Deputy Grubbs was solely responsible for the investigation leading up to the drafting of the affidavit. *Id*. at 5, ¶ 28. On November 4, 2019, Deputy Grubbs executed the search warrant at the property and

---

[1] The facts below are taken from plaintiff's amended complaint, Docket No. 23, and are presumed to be true for purposes of ruling on defendant's motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

seized thirty-three firearms from a safe located in an outbuilding on the property. *Id*. at 3, ¶ 16. The subject of the warrant was Mark Young. *Id*., ¶ 17.[2] The property was and is owned by Ms. Dulaney. *Id*., ¶ 19. Ms. Dulaney had possessory and ownership rights in the items seized as well as privacy rights in the property searched. *Id*. at 1. Mr. Young is prohibited from possessing firearms, *id*. at 3, ¶ 17, while Ms. Dulaney is not prohibited from possessing firearms. *Id*., ¶ 18.

Ms. Dulaney brings a Fourth Amendment claim for unlawful search and seizure against Deputy Grubbs pursuant to 42 U.S.C. § 1983. *Id*. at 5-6, ¶¶ 30-39. Deputy Grubbs moves to dismiss the complaint on the grounds of qualified immunity. Docket No. 26 at 5. Deputy Grubbs argues that the complaint fails to state a constitutional violation and the affidavit in support of the search warrant arguably establishes probable cause for the search. *Id*. at 6-11.

## II.     LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534

---

[2] Mr. Young was previously a plaintiff in this action, but moved to dismiss himself from the case on March 10, 2022. Docket No. 24. The Court granted the motion to dismiss Mr. Young on June 21, 2022. Docket No. 31.

F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("[W]e are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case."  *Pearson*, 555 U.S. at 236.

### III. ANALYSIS

#### A. Documents Outside the Pleadings

Generally, if a court considers matters outside the complaint in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Deputy Grubbs attached the search warrant and affidavit to her motion to dismiss. *See* Docket No. 26-1. Ms. Dulaney's amended complaint repeatedly refers to the search warrant and the affidavit, *see* Docket No. 23 at 2-6, ¶¶ 6, 15-17, 20-29, 32, 36. However, Ms. Dulaney did not attach either document to her amended complaint. *See generally id*. The search warrant and affidavit are central to Ms. Dulaney's claim because she argues that Deputy Grubbs violated her Fourth Amendment rights by "submitting a constitutionally defective affidavit and executing a search and seizure warrant fundamentally lacking probable cause to search the. . . property." *Id*. at 5, ¶ 32. Ms. Dulaney does not dispute the authenticity of the search warrant and affidavit or object to the Court considering these documents. *See generally* Docket No. 29. Accordingly, the Court will consider this exhibit in defendant's Rule 12(b)(6) motion without converting the motion to a motion for summary judgment. *See GFF Corp.*, 130 F.3d at 1384.

B. **Qualified Immunity**

In order to determine whether Deputy Grubbs is entitled to qualified immunity on the unlawful search and seizure claim, the Court must "ascertain whether [she] violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotations and citation omitted). Arguable probable cause is established if the officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). Accordingly, a defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to" conduct the search. *Id*.

When a search or seizure is conducted pursuant to a warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). However, issuance of the warrant by a neutral magistrate does not necessarily end the inquiry. An officer is not entitled to qualified immunity if the "the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Walker v. Park Cnty. Sheriff's Office*, 2022 WL 538121, at *3 (10th Cir. Feb. 23, 2022) (citing *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000); *United States v. Leon*, 468 U.S. 897, 923 (1984)).

Ms. Dulaney argues that Deputy Grubbs's affidavit fails to establish arguable probable cause. Docket No. 29 at 3-6. Ms. Dulaney asserts that "[a] cursory reading of the affidavit in support of the search of the Plaintiff's property should have revealed to the Defendant that it was so lacking in probable cause that it could not reasonably be

relied upon." *Id*. at 6. Ms. Dulaney contends that the affidavit "clearly fails to link the purported activity of Mr. Young to the Plaintiff's property." *Id*. Furthermore, Ms. Dulaney argues that no reasonable officer would have relied on the affidavit because Deputy Grubbs utilized stale and unreliable information in concluding there were firearms on the property. *Id*. at 4. She argues that Deputy Grubbs unreasonably relied on stale information from a 2009 police report and an unreliable story about Mr. Young threatening a neighbor. *Id*. at 4-5. Ms. Dulaney further asserts that the video footage from September 19, 2019 was arguably stale at the time of the application for the search warrant on October 30, 2019. *Id*. at 5.

In reviewing the affidavit, the Court finds that it is not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *See Walker*, 2022 WL 538121, at *3. The affidavit states the following relevant facts. On October 22, 2019, Ronald Owen reported to the police that his neighbor, Mr. Young, may be a convicted felon and that Mr. Owen had a video of Mr. Young carrying a weapon at 21813 P77 Road, Cimarron, County of Montrose, Colorado. Docket No. 26-1 at 3, ¶ 2. Deputy Grubbs called Mr. Owen, and Mr. Owen stated he had a video of his neighbor Mr. Young carrying a rifle and that Mr. Young also made a reference to hurting another neighbor. *Id*. at 3-4, ¶ 3. Mr. Owen emailed Deputy Grubbs the video, dated September 12, 2019, which showed a male party walking through a field of trees "carrying what appeared to be a scoped rifle style firearm with a sling." *Id*. at 4, ¶ 4. Pursuant to Deputy Grubbs's request, dispatch ran a criminal history check on Mr. Young, which identified an extensive criminal history and several felony convictions. *Id*., ¶ 5. Deputy Grubbs obtained Mr. Young's driver's license photograph and compared it

7

to the video, finding that Mr. Young had the same body build, stature, and age as the male in the video. *Id*., ¶ 6. Deputy Grubbs spoke with Mr. Owen again on October 25, 2019, and Mr. Owen advised her that the video was footage of his property from a game camera located about 150 yards from the fenced property line that splits Mr. Owen and Mr. Young's properties. *Id*., ¶¶ 7-9. Mr. Owen told Deputy Grubbs that he believed Mr. Young was on his property to gather Mr. Young's cows that kept wandering onto Mr. Owen's property. *Id*., ¶ 9. Mr. Owen expressed concern that Mr. Young might try to hurt him. *Id*. Mr. Owen reported that he has known Mr. Young for about four years and has spoken with him on numerous occasions, which is why he knew the person in the video was Mr. Young. *Id*. at 4-5, ¶¶ 10, 12. On October 27, 2019, Mr. Owen emailed Deputy Grubbs the original video from the game camera, which more clearly showed the face of the male party. *Id*. at 5, ¶ 14. Deputy Grubbs compared the video to Mr. Young's driver's license photograph and a prior Mesa County booking photograph, and she confirmed that Mr. Young matched the male in the video. *Id*., ¶ 14. On October 28, 2019, Deputy Grubbs spoke with Mr. Owen again. *Id*., ¶ 15. Mr. Owen described Mr. Young's house as an A-frame house with a wraparound porch. *Id*. Mr. Owen stated that Mr. Young has several guns, keeps a rifle in his truck, and is known to hunt bears near his home. *Id*. Deputy Grubbs's further investigation revealed that Mr. Young reportedly owned a scoped rifle from a 2009 criminal case, as well as a large gun safe. *Id*., ¶ 16.

"An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Knox*, 883 F.3d 1262, 1275

(10th Cir. 2018). The affidavit here describes Mr. Young's status as a felon, reliable information from a neighbor and video evidence establishing that Mr. Young was in possession of a rifle, and information that Mr. Young lived at the property. This evidence could establish a fair probability that Mr. Young was illegally possessing a firearm and that evidence of this crime could be found at the property.

The Court rejects Ms. Dulaney's argument that no reasonable officer would have relied on the affidavit because Deputy Grubbs utilized "stale and unreliable" information. *See* Docket No. 29 at 4-5. Ms. Dulaney cherry-picks two limited facts, the 2009 police report and the threat, to argue that the affidavit was lacking in indicia of probable cause. *See id*. However, Deputy Grubbs relied on multiple sources of information to conclude there was probable cause for the search and seizure, including official records confirming that Mr. Young was a felon, information from Mr. Young's neighbor establishing that Mr. Young lived at the property, and video evidence and information from the neighbor demonstrating that Mr. Young was in possession of a rifle on September 19, 2019 on Mr. Young's property. *See generally* Docket No. 26-1 at 3-5. The video footage is not stale because there was only a month-long gap between the date of the video footage and the application for the search warrant. *See* Docket No. 29 at 5; *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (holding that a five-month gap between when police received the tip and when a search warrant was obtained did not render the information stale).

Ms. Dulaney cites three cases in support of her argument that the affidavit was so lacking in indicia of probable cause, including *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005); *United States v. Dutton*, 509 F. App'x 815 (10th Cir. 2013)

9

(unpublished); and *Groh v. Ramirez*, 540 U.S. 551 (2004).  Docket No. 29 at 5-6.  However, the Court finds that each case is distinguishable.  In *Gonzales*, the court found that the affidavit was lacking in indicia of probable cause because there were no facts linking the suspect or the criminal activity to the property to be searched or any facts indicating why the officer thought the items to be seized would be located at the residence.  *Gonzales*, 399 F.3d at 1230-31.  In contrast, here, the affidavit established that Mr. Young lived at the property, he was a convicted felon, and he was seen carrying a rifle from his property to the neighbor's property.  Docket No. 26-1 at 3-5.  Therefore, the affidavit has sufficient facts to establish a nexus between Mr. Young, the residence, and the criminal conduct.  *See Gonzales*, 399 F.3d at 1228 (discussing how "[i]t is well-settled that for probable cause to exist there must be a 'nexus between [the contraband to be seized or] suspected criminal activity and the place to be searched.'").  In *Dutton*, the court found that the affidavit failed to provide any evidence that the storage unit to be searched belonged to the defendant.  *Dutton*, 509 F. App'x at 817.  In contrast, the affidavit here connects Mr. Young to the property because Mr. Owen reported that Mr. Young was his neighbor and lived at the property, Docket No. 26-1 at 3-5, ¶¶ 2, 3, 8, 15, and the video footage showed Mr. Young walking from his property to Mr. Owen's property with a firearm.  *Id*. at 4, ¶¶ 4, 8-9.  Finally, in *Groh*, the court ruled that the warrant was invalid on its face because it failed to describe with particularity the items to be seized.  *Groh*, 540 U.S. at 557.  Ms. Dulaney argues that this "case is no different than *Groh* . . . [because] [f]actually speaking, the affidavit clearly fails to link the purported activity of Mr. Young to the Plaintiff's property, residence, and curtilage."  Docket No. 29 at 6.  Ms. Dulaney fails to explain how the

10

holding in *Groh* controls in her case because she does not allege that the warrant failed to describe with sufficient particularity the items to be seized. *See generally id*. Instead, she challenges the nexus between Mr. Young and plaintiff's property, *id*. at 6, an argument that the Court has already rejected.

In summation, the Court finds that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. As a result, Deputy Grubbs is entitled to qualified immunity on the Fourth Amendment claim. *See Walker*, 2022 WL 538121, at *3-4.

## IV.   CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion to Dismiss [Docket No. 26] is **GRANTED**. It is further

**ORDERED** that claim one is **DISMISSED** with prejudice against Deputy Grubbs in her individual capacity. It is further

**ORDERED** that judgment shall enter for defendant and against plaintiff on the claim. It is further

**ORDERED** that this case is closed.

DATED March 13, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

11